Raymond G. **AUWARTER** and Roberta G. Auwarter, Plaintiffs,

v.

**DONOHUE PAPER SALES CORPORATION DEFINED BENEFIT PENSION PLAN, Donohue Paper Sales Corporation, and Richard Garneau, P. Denis Hamel and Edward B. Danz, as Trustees, Defendants.**

No. CV 91–3082(ADS).

United States District Court, E.D. New York.

Sept. 30, 1992.

Davis & Gilbert, New York City (Howard J. Rubin, of counsel), for plaintiffs.

Arnold & Porter, New York City (Paula M. Desel, of counsel), for defendants.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This case arises from a complicated set of twists and turns in the professional lives of the plaintiffs as well as the impact of certain entrepreneurial maneuverings by outside parties upon the plaintiffs' post-professional lives. Raymond and Roberta

Auwarter brought this lawsuit to obtain a lump sum benefit which they contend is due them under the terms of their pension plan. Adjudicating these claims requires the Court to journey into the complex sphere of ERISA law, the U.S. Treasury Regulations, and the Internal Revenue Code.

Both the plaintiffs and defendants move and cross-move for partial summary judgment on the various causes of action. All of the parties concur that summary judgment is appropriate in this case because the questions raised by the motions present issues of law rather than fact.

There are presently three motions before the Court:

> (I) a motion by the plaintiffs for partial summary judgment on their first claim for relief, directing the defendants to pay the plaintiffs the accrued pension benefits in the form of lump sums calculated under the DPSC Defined Benefit Pension Plan, plus accruals and interest;

> (II) a cross-motion for partial summary judgment by the defendants on the first, second and fourth causes of action related to the DPSC Plan, ERISA § 204(g), 29 U.S.C. § 1054(g), and the defendants' fiduciary duty to the Plan;

> (III) a cross-motion by the plaintiffs' for partial summary judgment on the second claim for relief for violations of the ERISA statute, directing the defendants to pay the plaintiffs their accrued benefits in the form of lump sums, plus accruals and interest.

## BACKGROUND

The Court has jurisdiction over this matter pursuant to § 502 of the Employee Retirement Income Security Act, codified as amended at 29 U.S.C. § 1132 ("ERISA"), as well as 28 U.S.C. § 1331.

### A. *The Parties*

The plaintiffs are former employees of the Donohue Paper Sales Corporation and are participants in the defendant Donohue Paper Sales Corporation Defined Benefit Pension Plan (the "Plan") and have been since its inception on October 1, 1980. The Plan is an employee retirement benefit plan providing benefits for all qualified employees.

The defendant Donohue Paper Sales Corporation is the Administrator of the Plan ("DPSC" or "Plan Administrator"). The Plan is administered at DPSC's principal place of business, namely, 100 Jericho Quadrangle, Jericho, New York. DPSC is also the Plan Sponsor and is responsible for its funding.

The defendants Richard Garneau, P. Denis Hamel and Edward B. Danz are Trustees of the Plan Trust and are responsible for its administration. Garneau is Vice–President of Finance, Hamel is Chairman of the Board of Directors, and Danz is Executive Vice–President of DPSC.

### B. *The Causes of Action*

The plaintiffs allege the following causes of action against the defendants: (1) an initial claim against all of the defendants under the general ERISA statute based on the defendants' alleged attempt to reduce the lump sum benefits due the plaintiffs under the terms of the DPSC Plan and/or attempting to eliminate the lump sum option in violation of the express terms of the Plan; (2) a second claim against all of the defendants for [a] allegedly violating ERISA § 204(g), 29 U.S.C. § 1054(g) which provides that a plan cannot be amended to eliminate an optional form of benefit and [b] failure to follow Treasury Regulations under the Internal Revenue Code § 411(d)(6) which sets strict rules for permitting plan sponsors to amend their plans to reduce an accrued benefit; (3) a claim against DPSC for allegedly violating ERISA § 502(c), 29 U.S.C. § 1132(c) by failing to provide to the plaintiffs within 30 days of their request the values and calculations of lump sum benefits under terms of the Plan prior to any alleged modification by the Board; (4) a claim against DPSC, Garneau, Hamel and Danz, pursuant to ERISA §§ 404 and 405, for breach of their fiduciary duty in withholding the plaintiffs' lump sum benefits.

In their Answer, the defendants assert the following defenses: (1) failure to state a claim upon which relief can be granted; (2) failure to exhaust administrative remedies; and (3) failure to comply with the requirements of ERISA. In order for the Court to sort out these claims, it is necessary to review in a limited fashion the history of the relationship between the parties.

### C. *The Chronology of Events*

From 1970 to 1974, the plaintiff Raymond Auwarter performed marketing studies and sales services for the Donohue Company Limited, a company which owned and operated newsprint and paper production facilities with mills in Quebec. The Company subsequently became known as Donohue, Inc. ("Donohue").

In 1974, Raymond Auwarter acquired the shares of Donohue Paper Sales Corp. ("DPSC"), a shell corporation set up by Donohue Inc., and became DPSC's president. His wife, Roberta Auwarter, became the vice-president and secretary of DPSC. In October, 1980, Donohue and DPSC entered into a global sales agreement which was later amended to terminate in 1994.

According to Raymond Auwarter, in September 1981, he directed Miller & Miller Consulting Actuaries, Inc. ("M & M") to draft a pension plan for DPSC—the "DPSC Defined Benefit Pension Plan" (the "Plan"). DPSC funded the Plan at Auwarter's direction "as established by law with the actuarial advice of M & M" (Auwarter Affidavit, ¶ 6).

Roberta and Raymond Auwarter became participants in the plan on October 1, 1980, the Plan's effective date, and began accruing benefits. Section 7.1 of the Plan provides that participants may elect to receive their pensions in a single lump sum at the discretion of the Pension Committee. Auwarter was chairman of the Pension Committee and "it had always been his intention" to approve lump sum election. He states that no one was ever denied a lump sum benefit.

In June, 1987, the well-known publishing impresario Robert Maxwell acquired a controlling interest in Donohue Inc. along with Pierre Peladeau, a Quebec businessman. At that point, the officers of Donohue changed as did Auwarter's relationship with the company. On May 5, 1989, Auwarter sold the shares of DPSC to Donohue Inc. One condition of the sale was that Raymond and Roberta Auwarter retire. Roberta Auwarter terminated her employment on March 31, 1989. Although Raymond Auwarter ceased his employment with DPSC on April 30, 1989, he remained as Chairman of DPSC and as Chairman of the Pension Committee until May 1, 1991.

According to the plaintiffs, DPSC had fully funded the Plan to anticipate the lump sum election by employees nearing retirement age, and Raymond Auwarter had directed that DPSC make annual contributions to the plan at or near the maximum recommended amount as set each year by M & M. Auwarter claims that in a July 26, 1989 phone conversation with defendant Denis Hamel, DPSC's Chairman of the Board, he advised Hamel that he and Roberta would be electing a lump sum benefit under the Plan and asked for information regarding that benefit option.

M & M provided its actuarial report for the 1988–89 year in November, 1989, which indicated the minimum and maximum funding levels for the year based on the assumption that lump sum payments would be made to Roberta and Raymond Auwarter. In a December 12, 1989 letter to defendant Plan Trustee Garneau, M & M states that in response to Garneau's request, the firm estimated the "approximate benefit liability values for Mr. & Mrs. Auwarter," with figures arranged by actual termination date and by normal retirement date (Complaint, Exhibit 4). Both sets of numbers reflect a lump sum distribution.

The Auwarters claim that they never received any of the benefit option information despite numerous verbal requests to defendant Hamel. They then sent a written request dated March 13, 1990, asking for the same information. Raymond Auwarter contends that during an April 20, 1990 meeting, defendant Garneau allegedly told Auwarter that DPSC had learned that

it could not deny the Auwarters' request for a lump sum benefit under the terms of the Plan. DPSC then allegedly advised Auwarter that it would soon amend the Plan to eliminate the lump sum option. At that same April 20, 1990 meeting, Auwarter says he was advised that the Plan's actuary was being changed from M & M to "C & B Consulting Group." He adds that despite his position as Chairman of the Pension Committee, he was not consulted regarding the actuary change. During this period of time, the Board of Directors of DPSC was comprised of the plaintiff Raymond Auwarter and defendants Denis Hamel and Richard Garneau.

At a DPSC Board of Directors meeting in Quebec City on May 11, 1990, the Board adopted a resolution to amend the Plan, eliminating the lump sum option. Prior to the meeting, Raymond Auwarter had requested copies of the written proposals to be reviewed, but he states that those documents were never sent to him. Auwarter was at the meeting and abstained from the vote. By letter dated May 24, 1990, Garneau advised the Auwarters that they were not entitled to lump sum payments because that option was no longer available under the Plan.

However, despite their statement, DPSC sent a letter to the Auwarters dated July 4, 1990, "proposing to grant" them the lump sum benefits, but at rates specified by the Pension Benefit Guaranty Corporation, which resulted in reduced benefit amounts. The Auwarters protested in a July 9, 1990 letter, and again asked for their entitlement of a lump sum benefit under the terms of the Plan prior to the alleged modification. On August 15, 1990, DPSC again denied the lump sum benefits to the Auwarters, stating that the lump sum option was legally and effectively removed from the Plan.

According to Auwarter, M & M sent a letter to the IRS on January 8, 1991, requesting information about IRC § 411(d)(6). The reply received from the IRS stated that the Auwarters' benefits could not be reduced by plan amendments and that such a plan violated the IRC.

Auwarter alerted DPSC to the IRS determination and asked for a resolution, further advising DPSC that its failure to "select" an operational alternative before October 1, 1989, effectively barred DPSC from retroactively eliminating the lump sum benefit option from the Plan with respect to all participants. In response, DPSC continued to state that since no lump sum payments were offered or made since October 1, 1989, DPSC could legally amend the Plan retroactively, despite the IRS determination letter.

## THE INSTANT MOTIONS

A. *Plaintiffs' Motion for Partial Summary Judgment on First Cause of Action Under ERISA and the DPSC Plan.*

The plaintiffs move for summary judgment claiming that, in seeking to amend the DPSC Plan to eliminate the lump sum option, the defendants failed to comply with certain ERISA provisions and related Treasury Regulations.

In support of the motion, counsel for the plaintiffs has provided the affidavit of Raymond Auwarter which has been discussed at length in the Chronology above. The first cause of action seeks relief under the general ERISA statute, namely the lump sum distribution under the terms of the Plan.

Plaintiffs were 100% vested in their accrued benefits under the terms of the Plan on their respective termination dates and they argue that the lump sum option existed at the time of their terminations (Plaintiffs' Rule 3[g] Statement, ¶¶ 10, 12). According to the plaintiffs, the defendants did not amend the Plan to eliminate the lump sum option until after the Auwarters indicated their desire to elect their benefits in lump sums.

The plaintiffs also contend the defendants did not comply with the regulations which permit retroactive amendments because they did not make a "selection" by the first day of the Plan year after January 1, 1989 (in this case, October 1989). The defendants acknowledge that they did not

decide to eliminate the lump sum option ("selection") until a Board of Directors meeting in May, 1990, eight months later.

The plaintiffs further contend that under ERISA, an optional form of benefit cannot be eliminated by plan amendment. However, the plaintiffs do admit that ERISA § 204(g)(2) gives the Secretary of the Treasury the authority to promulgate regulations that sanction amendments to that effect (29 U.S.C. § 1054[g][1] and [2]).

The defendants acknowledge that ERISA prohibits the elimination of an optional benefit form, but argue that they have complied with a limited exception to that rule as provided in the Treasury Regulations, which permits retroactive amendments as long as the Plan makes a "selection" by the first day of the Plan year after January 1, 1989, and operates the Plan in conformity with that selection. In this case, the applicable date would be October 1, 1989.

The defendants maintain that the normal form of benefit under the DPSC Plan is an annuity, and that prior to its amendment, Article 7.1 of the Plan provided that a participant could elect to convert the Normal Form of Benefit to certain Optional Forms of Benefit, including a lump sum, subject to the approval of the Pension Committee. Article 7.1 requires that a Plan participant give written notice of such election to the Plan's Pension Committee (Defendants' Rule 3[g] Statement, ¶¶ 3, 4).

The defendants argue that the plaintiffs did not give written notice of election of an optional lump sum form of benefit until March 13, 1990, and that the written notice did not include "notarized spousal consent letters" required by Article 6.6. According to the defendants, the plaintiffs have not given written notice of the date on which they wish their benefits to commence.

Defendant DPSC also maintains that no lump sum benefits have ever been approved by the Pension Committee or distributed under the DPSC Plan. The defendants also state that Plan Sections 8.3 through 8.3.5 have "always prohibited lump sum payments to highly compensated employees, such as the Auwarters, where the full current costs of the Plan are not being met." The Auwarters' respective salaries in 1988 were $350,000 and $60,000.

According to the defendants, they are perfectly prepared to pay the plaintiffs, but the plaintiffs claim entitlement to something the Plan never promised them—a lump sum payment with a present value far in excess of the annuity benefit actually promised by the Plan. Defendants claim the statutes and regulations do not require them to make such a payment.

The defendants also assert that the promised benefit under the Plan is an annuity, not a lump sum. However, the defendants subsequently state that "prior to its recent amendment, the Plan did, in fact, provide certain 'Optional Forms of Benefit,' including a lump sum—*BUT* entitlement to such did not arise upon a unilateral election of the type made here by the plaintiffs." Rather, the defendants emphasize, the lump sum had to be approved by the Pension Committee, and such approval was not given to the plaintiffs, nor has it ever been granted to any participant under this Plan.

The Auwarters assert that the July 4, 1990 Garneau letter making an "offer" for a reduced lump sum effectively annulled any decision the Board may have made eliminating the lump sum option. The defendants deny that an "offer" was ever made to the plaintiffs, calling the Garneau letter a "preliminary inquiry" and not an offer which could serve to invalidate the amendment made by the Board.

B. *The Defendants' Cross-Motion for Partial Summary Judgment on the First, Second and Fourth Causes of Action*

The Court has already set forth the contentions of both parties concerning the first cause of action based upon the general ERISA statute and the DPSC Plan.

The motions concerning the plaintiffs' second cause of action hinge upon whether the defendants violated certain ERISA provisions and related Treasury Regulations in amending the plan to eliminate the lump sum option. Treasury Regulation § 1.411(d)–4(c)(2) provides an exception to

ERISA § 204, which prohibits the amendment of accrued benefits. In order to amend the Plan to eliminate the lump sum option pursuant to the Treasury Regulations, the defendants must "select" an alternative and impose "operational compliance" during the transitional period.

The plaintiffs argue that the defendants did not "select" the alternative of not paying lump sum benefits. They contend that the statutory mandate that an alternative must be selected means that the defendants must *do* something, and must "affirmatively act," to qualify as having effected a selection. Plaintiffs argue that the "mere happenstance" of not paying benefits where the situation has never before arisen does not constitute a selection and that "to fail to act is not to 'select' " (Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, p. 10).

On the other hand, the defendants argue that DPSC did "select" not to pay lump sum benefits and acted in operational compliance in not doing so. They rely on the fact that they never paid any lump sum benefits, although there is also no indication that anyone ever previously requested lump sum benefits. The defendants suggest that the plaintiffs are wrong in reading an affirmative act into the Treasury Regulation, since Treas.Reg. § 1.411(d)–4 states that there is no reporting mandate for an operational requirement. According to the defendants, the plan amendment and the consistent plan practice met all applicable requirements for the elimination of the discretionary lump sum option.

These cross motions for partial summary judgment based upon the second claim for relief must be decided on the basis of whether the defendants complied with ERISA § 204 and IRC § 411 in amending the Plan to eliminate the lump sum option. If the defendants timely "selected" an option and operated in accordance with that alternative transitional period option, eventually amending the Plan accordingly, the defendants' cross-motion for partial summary judgment should be granted based upon those specific ERISA and IRC provisions.

### C. *Cross–Motion for Breach of Fiduciary Duty*

The defendants' cross-motion for partial summary judgment concerning the fourth claim for relief turns upon the fiduciary duty of the defendants as trustees of the plan. The plaintiffs claim that the trustees had a fiduciary duty to properly fund the Plan so that all participants were able to obtain lump sum benefits if they so chose. On the other hand, the defendants maintain that giving the lump sum benefits would breach their fiduciary duty to keep the plan funded for everyone covered by the Plan.

The fiduciary duty of the trustees of a plan is outlined in 29 U.S.C. §§ 1104 and 1105. The defendants note that if the plaintiffs had a right to lump sum benefits and the defendants knowingly failed or refused to comply with their responsibilities under the Plan, such as inadequately funding the plan with the intention of prohibiting the plaintiffs from receiving lump sum benefits, then the trustees would have breached their fiduciary duty to the plan recipients. However, the defendants further argue that their fiduciary duty to all the Plan participants compelled them to deny lump sum payments to the plaintiffs because such payments would deplete Plan funds and because the Plan was only funded for election of the annuity form.

According to the defendants, §§ 8.3 through 8.3.5 of the Plan prohibit lump sum payments in excess of $20,000. The plaintiffs rebut this argument by pointing out that, Plan § 8.3, and tax provision § 1.401 on which the defendants rely, only applies to funding in the first 10 years of the Plan's existence. Since the plan has been in existence for 11 years, from October 1, 1980, the plaintiffs argue that the provision is not applicable to the present set of facts.

As to the tax provision, the plaintiffs point out that the regulation "provides only that if annual annuity payments are to be made, each payment must be limited to a certain amount." It would be inconsistent, according to the plaintiffs, to have § 8.3 of the Plan limiting payment to $20,000 dol-

lars per year and simultaneously to have § 7.1 providing the option of a lump sum benefit.

## THE GOVERNING LAW

### A. *Summary Judgment Standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 [2d Cir. 1990], and the movant is entitled to judgment as a matter of law (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see also* Fed.R.Civ.P. 56[c] ). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 [2d Cir.1990]; *Liscio v. Warren*, 901 F.2d 274, 276 [2d Cir.1990]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987] ).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists (*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990] [quoting Fed.R.Civ.P. 56[e]; *see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989] ). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see Converse v. General Motors Corp.*, 893 F.2d 513, 514 [2d Cir.1990] ).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment (*see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990] ). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable (*see Rattner v. Netburn*, 930 F.2d 204 [2d Cir.1991] ). Finally, the Court is charged with the function of "issue finding", not "issue resolution" (*Eye Assocs., P.C. v. Incomrx Sys. Ltd. Partnership*, 912 F.2d 23, 27 [2d Cir. 1990] ).

### B. *The Erisa Provisions*

ERISA § 204(g), 29 U.S.C. § 1054(g), provides in pertinent part as follows:

**"(g) Decrease of accrued benefits through amendment of plan**

(1) The accrued benefit of a participant under a plan *may not be decreased by an amendment of the plan,* other than an amendment described in section 1082(c)(8) or 1441 of this title.

(2) For purposes of paragraph (1), a plan amendment which has the effect of—

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy ... or

(B) *eliminating an optional form of benefit,*

with respect to benefits *attributable to service before the amendment shall be treated as reducing accrued benefits....*" (emphasis supplied).

### C. *Treasury Regulations*

In addition to the statute, the Treasury Regulations define a lump sum benefit as an optional form of benefit. Treasury Regulation § 1.411(d)–4, Q & A 1(b) states as follows:

"(b) *Optional forms of benefit—(1) In general.* An 'optional form of benefit' is a distribution form with respect to an employee's benefit ... that is available under the plan and is identical with respect to all features relating to the distribution form, including the payment schedule, timing, commencement, medium of distribution ..."

Treasury Regulation § 1.411(d)–4, Q & A 9(c)(2) provides as follows:

"(2) *Existing noncollectively bargained plans.* With respect to existing plans other than collectively bargained plans, this section is effective for the first day

of the first plan year commencing on or after January 1, 1989."

### DISCUSSION

I. The Auwarters' Claims Under the DPSC Defined Benefit Pension Plan and the ERISA Statute

Article 7 of the DPSC Defined Benefit Pension Plan states in pertinent part as follows:

"**ARTICLE 7. OPTIONAL FORMS OF BENEFIT AND RELATED MATTERS**

7.1 *Other Optional Forms Available.* Each Participant may by written notice received by the Pension Committee prior to his Benefit Commencement Date, subject to approval by said Committee, elect to convert his retirement or vested benefit from the Normal Form of Benefit to any one or a combination of any number of the following Optional Forms of Benefit:

7.1.1 Lump Sum Benefits.

7.1.2 Life Annuity Without Survivor's Benefit.

7.1.3 Contingent Annuitant Annuity...."

It is clear from the record that on the dates when the Auwarters terminated their employment with DPSC, namely March 31, 1989, and April 30, 1989, Section 7.1 of the Plan still provided an optional election of lump sum benefits.

The defendants acknowledge that as part of the Retirement Equity Act of 1984, federal pension law was changed to provide generally that plan amendment eliminating an "optional benefit form" would be treated as a prohibited reduction of an accrued benefit. An unqualified right to receive benefits in a lump sum rather than an annuity is such an optional benefit form (Treas.Reg. § 1.411(d)–4). And, as the statute explicitly states, an optional form of benefit, such as the lump sum option under Section 7.1, cannot be eliminated by Plan Amendment (see ERISA § 204[g], 29 U.S.C. § 1054[g][2]; *see also Davis v. Burlington Industries, Inc.,* 966 F.2d 890 [4th Cir.1992]).

Regulations that were issued in 1988 interpreting this law also state that entitlement to optional benefit forms may no longer be conditioned on employer discretion. However, because of the impact, the regulations provided for a transition period during which plan sponsors could choose one of three alternatives: (1) amend the plan to eliminate the optional form of benefit; (2) make the benefit available to all participants without limitation or (3) apply objective and nondiscriminatory conditions to the availability of the optional form of benefit. The defendants claim they are in compliance with method (1).

A. *ERISA Standard and Treasury Regulations*

(i.) Selection and Operational Requirements

ERISA § 204(g), 29 U.S.C. § 1054(g), and IRC § 411(d)(6) prohibit the retroactive reduction of benefits accrued by participants in a retirement plan. Treasury Regulation § 1.411(d)–4, Q & A 1(b)(2) provides a limited exception to that rule by allowing the plan sponsors to make an amendment eliminating an "optional benefit form." Q & A 8(c) of that same Regulation sets out the manner in which such an elimination may be accomplished. It requires that

"On or before the applicable effective date for the plan ... the plan sponsor must *select* one of the alternatives ... *and* the plan must be *operated in accordance with this selection*" (emphasis supplied).

The regulations set forth a transition period during which Plan sponsors may choose one of three alternatives: (1) eliminating an optional form of benefit; (2) making such benefit available to all participants without limitation; or (3) applying objective and non-discriminatory conditions to availability of optional forms of benefit (Treas. Reg. § 1.411[d]–4, Q & A [b]).

The regulations provide two dates of relevance. Treas.Reg. § 1.411(d)–4, Q & A 9(c)(2) states that the operational effective date for the regulations is the first day of the first plan year commencing on or after

January 1, 1989. Since the DPSC Plan operates on a September 30 year plan, the effective date on which operational compliance has to begin was October 1, 1989. The second date provided in the regulations is the date by which the Plan must actually be amended to reflect the alternative chosen. That date for the DPSC Plan is October, 1993. As to the latter date, neither party disputes that the deadline for amendment has been met.

Treas.Reg. § 1.411(d)–4, Q & A 8(d) embodies the default provision of the regulation and specifies that if timely selection is not made, any amendment eliminating an optional form of benefit made after the applicable effective date violates the rule prohibiting the elimination of an optional form of benefit. The issue here is whether the operational requirement cited in Treas. Reg. § 1.411(d)–4, Q & A 8(c) was met.

The plaintiffs contend that in amending the Plan, the defendants failed to comply with the above ERISA provisions and Treasury Regulations. The defendants, on the other hand, assert that they have complied with the limited exception to the ERISA rules as outlined in the Treasury Regulations in amending the Plan to eliminate an optional form of benefit.

The plaintiffs rely upon ERISA § 204(g)(1), 29 U.S.C. § 1054(g)(1) to support their argument that an accrued benefit may not be decreased by an amendment to the Plan, and further contend that based upon the language of ERISA § 204(g)(2), a plan amendment that has the effect of eliminating an optional form of benefit will be treated as one decreasing the participant's accrued benefit. The lump sum benefit offered in the DPSC Plan was, in fact, an optional form of benefit and could not be eliminated without strict adherence to the limited exception to ERISA § 204(g) provided in § 1.411(d)–4, Q & A 8(c) of the Treasury Regulations.

The operational compliance requirement imposed by this Treasury Regulation mandates that the plan sponsor must: (1) select one of the transitional alternatives permitted under § 1.411(d)–4, Q & A 8(b) as noted above; (2) operate the Plan in accordance

therewith; and (3) make a formal amendment to the plan at a later date. The Court finds that the defendants took no action to remove the lump sum benefit option until the May 11, 1990 meeting of the Board of Directors in Quebec City—more than seven months after the required date for selection imposed by Treas.Reg. § 1.411(d)–4, Q & A 8(c). The defendants admit this fact.

The Court further finds that the defendants had an affirmative duty, contrary to their arguments, to take some action by the date specified, namely October 1, 1989, since "selection" and "operational compliance" are specifically mandated by the regulation. Their contention that they "selected" by continuing not to do something that they claim they had not been doing all along, namely paying out lump sum benefits, is logic strained beyond the bounds of reasonableness. The defendants should take little solace in the argument that they have complied with the Treasury Regulations in that they did not make any lump sum distributions during the interim period before the actual Plan amendment. The Court notes from the papers submitted by both parties that the Auwarters were the only Plan members, among the total of nine DPSC employees covered by the Plan, who were at or near retirement age. Clearly, no other Plan member was eligible for or sought a lump sum benefit under the terms of the Plan. The Court agrees with the plaintiffs that if the regulations did not require an overt action on the part of the defendants, there would be little reason to include a separate requirement of operational compliance.

Although the defendants go to great lengths to distinguish one of the very few cases which addresses this issue, the Court finds persuasive the reasoning of the District Court of Alabama in *Hollingshead v. Burford Equipment Co.,* 747 F.Supp. 1421, 1434 (M.D.Ala.1990). In *Hollingshead,* the plaintiffs sought to obtain early retirement benefits as provided under the terms of their plan. The Plan's sponsor, Burford Equipment Company, had the discretion under the plan to decide which participants were to receive early retirement benefits.

Burford opposed the plaintiffs' motion for summary judgment, claiming that it would take advantage of the exception found in Q & A–8(c) because: (1) the deadline for amending the plan had not yet passed; (2) it had not approved the payment of bene-. fits from the time it sold its assets in 1987; and (3) it did not plan to approve any early retirement benefits in the future. These arguments are remarkably similar to those made by the instant defendants. However, the court disagreed with the defendants in *Hollingshead,* and noted the following relevant points:

"The exception is not applicable to Burford ... [A]n operational compliance requirement is imposed by Q & A–8(c)(1), pursuant to which Burford was required to *select* one of the alternatives permitted under Q & A–8(b) and operate the plan in accordance therewith. Burford contends that it chose to eliminate the optional early retirement benefit. In the opinion of this court, Burford made no such selection. *Its failure to pay any benefits to anyone after the asset sale is not regarded by this court as a selection of an operational alternative"* (*Hollingshead, supra,* at p. 1434) (emphasis in the original).

In the opinion of this Court, DPSC has made no such selection and the fact that it has not paid out any lump sum benefit to anyone at any time before or after the October 1989 deadline is not controlling.

### (ii.) Plan Practice

Treas.Reg. § 1.411(d)–4, Q & A 8(c)(2) provides that the amendment to the Plan made at a later date should be "consistent with the sponsor's selection as reflected by plan practice during the period from the effective date to the date the amendment is adopted."

The transitional alternatives permitting the elimination of an optional form of benefit were available to the defendants only until October 1, 1989. Q & A 8(c)(2) states as follows:

"Thus for example, if any existing ... benefit plan has a single sum distribution option that is subject to employer discretion as of August 1, 1986, and such em-

ployer makes one or more single sum distributions available on or after January 1, 1989, and before the effective date by which plan amendment is required pursuant to this section, then such employer may not adopt a plan amendment eliminating the single sum distribution, but rather must adopt an amendment eliminating the discretion provision."

The language of this provision clearly indicates that if plan practice has included the payment of lump sum benefits during the period in question, an amendment inconsistent with such practice cannot subsequently be adopted. This language does not apply to the instant action because no lump sums were paid in the interim period between operational compliance and the adoption of the amendment.

The plaintiffs also contend that the defendants failed to "operate" the Plan in accordance with their selection to eliminate the lump sum benefit by making the lump sum benefit, although at a reduced dollar amount, available to the plaintiffs in a July 4, 1990 letter from Denis Hamel to Richard Garneau. The defendants argue that the July 4, 1990 letter is inadmissible under Fed.R.Evid. 408 as a statement "made in the course of settlement negotiations." Based on the content of the letter and the nature of the continuing correspondence between the parties, nature of the continuing correspondence between the parties, the Court finds this argument unavailing.

The Court therefore finds that the defendants' "selection" on May 11, 1990, was not timely and that by making a subsequent lump sum offer to the Auwarters at a less favorable interest rate, the defendants were not operating the Plan in accordance with the selection made at the May 11, 1990, to eliminate lump sum benefits.

Clearly, the defendants' actions in eliminating the lump sum option resulted in a decrease in the Auwarters' accrued benefits under the Plan—a violation of Treas. Reg. § 1.411(d)–4, Q & A 1. Without an exception under ERISA § 204(g), the defendants have unreasonably withheld the

plaintiffs' benefits accrued under the Plan. The Court finds no such exception available to the defendants here.

## B. *The Remaining Contentions*

The defendants argue that the Auwarters did not give written notice of election to the Plan Pension Committee any time before March 13, 1990. Having reviewed the correspondence and motion papers, the Court finds no merit to this argument.

█ In addition, the defendants rely on the Section 7.1 Plan language which states that prior to the participant's benefits commencement date, he may by written notice to the Committee and "subject to approval by said Committee," elect to convert his vested benefit from the normal annuity form to an optional lump sum benefit. On this topic of Committee discretion, the Court finds significant the February 8, 1991 letter of Joyce E. Floyd, Chief of Employee Plans Rulings Branch of the IRS, to Christopher Smith of M & M, the initial actuarial consultants for the Plan. Floyd indicates that her letter is in response to Smith's request for general information relating to section 411(d)(6) of the IRC. Although this communication is not a letter ruling, the Court finds the following information nonetheless persuasive:

"Regulations under section 401(a)(4) of the Code were also issued on July 11, 1988. Section 1.401(a)–4 of the regulations, Question and Answer–4, provides generally that *although a plan may mandate a single sum distribution to participants with benefits whose present value do not exceed $3500, such single sum distributions are not excepted from the limits of employer discretion contained in section 411(d)(6) of the Code.*

Section 1.411(d)–4 of the regulations, Question and Answer–4(a), provides generally that a plan which permits an employer, either directly or indirectly, *through the exercise of discretion, to deny a participant a section 411(d)(6) protected benefit provided under the plan for which the participant is other-*

*wise eligible violates the requirements of section 411(d)(6)....*

Section 1.411(d)–4 of the regulations, Question and Answer–8(b), provides, generally, that a *plan which conditions the availability of an optional form of benefit on employer discretion must be amended ...*

Question and Answer–8(d) provides generally that the alternatives provided in (b) are *only permissable [sic] until the applicable effective date of the plan* ... After the applicable effective date ... *any amendment ... that eliminates or reduces a section 411(d)(6) benefit or imposes new objective conditions on the availability of such benefit will fail to qualify for the relief provided under 8(b)* (emphasis supplied).

The defendant argues that the right to receive a lump sum benefit was conditioned upon the discretion of the Committee. The Court finds that the above information demonstrates that there are limits to such discretion, and the policy clearly disfavors a plan which conditions the availability of an optional form of benefit on employer discretion.

█ As to the defendants' claim that the funding would be depleted for other participants in the Plan if the plaintiffs were permitted to take a lump sum benefit, the Court finds such argument to be without merit. There are only nine participants in the DPSC Plan and only the plaintiffs are near retirement age. The Treasury Regulations and Internal Revenue Code provisions relied upon by the defendants in this regard are designed to prevent discrimination with respect to benefits provided under the plan. In the instant case, there is no discrimination since the lump sum benefit is available to all participants and the value of the benefit is determined using the same actuarial assumptions for all plan participants.

█ According to the defendants, § 8.3 of the DPSC Plan has always prohibited lump sum payments to "highly compensated employees during the first ten years after the 'effective date' of the plan." The defendants also rely upon IRC § 401(a)(4)

and its accompanying regulations which restrict the amount paid each year to any highly compensated employee under a pension plan. The Court finds such reliance misplaced. These regulations apply only to plan *amendments* made in favor of highly compensated employees. There is no issue of an amendment in this case, but rather the benefit entitlement under the original plan provisions. There have been no amendments to the Plan which favor the plaintiffs. The Court further finds that IRC § 401(a)(4) relates specifically to income tax provisions and not to ERISA benefit claims (*see Reklau v. Merchants National Corp.*, 808 F.2d 628, 631 [7th Cir. 1986]).

Ultimately, the cited regulations and Plan provisions apply only if the Plan is terminated *within the first ten years after its establishment.* The Court finds that the effective date of the DPSC Plan was October 1, 1980. Section 8.3 of the Plan provides as follows:

"8.3 *10–Year Benefit Restriction.* Notwithstanding any contrary Plan provision, in the event that, during the first 10 years after the Effective Date or the date the plan is amended in a manner substantially increasing benefits for highly compensated Participants (a "Restriction Date"), the Plan is terminated, the full current costs of the Plan are not met or the Employer's contributions are permanently discontinued, the Employer contributions or funds attributable thereto ... shall be subject to the conditions set forth in this Section 8.3."

In light of the fact that the Plan has been in existence for more than ten years, the Court finds that this is another reason why the regulations are not applicable.

Having reviewed all of the arguments made by the plaintiffs and defendants, the Court finds that the defendants are in violation of the DPSC Plan regarding the optional lump sum benefit and in violation of ERISA § 204(g), 29 U.S.C. § 1054(g) which prohibits the retroactive reduction of benefits accrued by participants in a retirement plan. Therefore, the Court grants the plaintiffs' motion for partial summary judgment on the first cause of action and its cross-motion for partial summary judgment on the second cause of action.

II. The Defendants' Obligations as Fiduciaries

■ According to the defendants, a fiduciary's duties under ERISA run to all participants in the Plan and allowing lump sum payments to the plaintiffs would have been devastating to the long-term interests of the Plan. The Court reminds the defendants that "all participants in the plan" encompasses a duty to the Auwarters as well.

The defendants also argue that the Plan's funding was based on the assumption that benefits would be paid in annuity form. Although the Court accepts the fact that many pension plans are operated under such a premise, the instant plan also provides for an optional lump sum benefit. The Court finds that if the Plan pay-out was actually designed as a yearly annuity, then the provision for an optional benefits pay-out scheme should never have been incorporated in the Plan provisions. By including a lump sum option, the authors of the Plan had a collateral responsibility *ab initio* to insure the Plan's funding.

Section 7.1 of the Plan makes benefits available to participants in a lump sum form regardless of the method used to fund the Plan. Contradictions in Plan terms or in ERISA regulations violates a fiduciary's duty to its plan participants to operate the Plan in accordance with the statute and Plan terms (see ERISA § 404[a][1][D]). Despite the insufficiency in Plan assets which may arise due to erroneous funding assumptions, ERISA does not permit a benefit cut-back in such circumstances. In fact, ERISA specifically prohibits such cut-backs and requires the fiduciary to provide the benefits promised in the Plan (ERISA § 204[g]). Furthermore, there is no limitation in the Plan stating that a benefit entitlement is subject to the Plan being adequately funded.

In light of the foregoing, the defendants' motion for partial summary judgment on the fourth cause of action is denied.

## CONCLUSION

Based upon the foregoing, the Court concludes that there are no triable issues of fact with regard to the first, second and fourth causes of action. The Court therefore makes the following determinations:

(1) the motion by the plaintiffs for partial summary judgment on the first cause of action under the DPSC Defined Benefit Pension Plan is granted and the defendants' cross-motion for partial summary judgment is denied;

(2) the defendants' motion for partial summary judgment on the second cause of action under ERISA § 204(g), 29 U.S.C. § 1054(g), is denied and the plaintiffs' cross-motion for partial summary judgment is granted;

(3) the defendants' motion for partial summary judgment on the fourth cause of action related to the defendants' fiduciary duty to the Plan is denied.

In light of the fact that neither party has addressed the third cause of action, namely, the Auwarters' claim against DPSC for failure to provide them within 30 days of their request the values and calculations of lump sum benefits under the terms of the Plan prior to any modification by the Board, this case is hereby set down for a conference on October 19, 1992 at 9 a.m., in Courtroom A of the Uniondale Courthouse, to address the remaining issues related to the third and fourth causes of action.

SO ORDERED.