**Talia PAGOVICH, Plaintiff,**

v.

**Henry MOSKOWITZ and William Kronethal, Defendants.**

**No. 93 Civ. 3195 (CSH).**

United States District Court, S.D. New York.

Sept. 13, 1994.

---

Stephen A. Marshall, Rubin Baum Levin Constant & Friedman, New York City, for Talia Pagovich.

John Cullen, D'Amato & Lynch, P.C., New York City, for William Kronenthal.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge.

This is an action arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, involving the defendants' alleged failure to comply with their fiduciary and statutory obligations to provide plaintiff with information regarding certain pension and profit sharing plans and to release to her the accrued benefits under those plans. This Opinion resolves several pending motions. Defendant Henry Moskowitz ("Moskowitz"), a medical doctor, moves to dismiss the complaint. Plaintiff Talia Pagovich moves to amend the complaint to add the pension and profit sharing plans as defendants. Plaintiff also moves for partial summary judgment against Moskowitz pursuant to Fed.R.Civ.P. 56(c). Finally, defendant William Kronethal ("Kronethal") seeks summary judgment dismissing the complaint under Rule 56(c). For reasons discussed below, plaintiff's motion to

amend the complaint is granted; Moskowitz's motion to dismiss the complaint is denied; plaintiff's motion for partial summary judgment against Moskowitz is granted; and Kronethal's motion for summary judgment is denied.

## I. *BACKGROUND*

Plaintiff Talia Pagovich is the widow of Dr. Benjamin Pagovich who practiced medicine in partnership with Moskowitz from July, 1982 through October, 1987. During the course of the medical partnership, Moskowitz established two plans for the benefit of, among others, Pagovich: the Henry Moskowitz, M.D., P.C. Pension Plan and Trust, and the Henry Moskowitz, M.D., P.C. Profit Sharing Plan and Trust (collectively, the "Plans"). Moskowitz admits that he was and continues to be the trustee, administrator and a fiduciary of the Plans. *See* Answer of Moskowitz at ¶¶ 8, 26. The complaint alleges that Kronethal, the President of Integrated Planning and Associates and Vice–President of Standard Pension Services, Inc., was and continues to be an administrator and/or investment manager of the Plans, an allegation which Kronethal denies. Plaintiff is a beneficiary under the Plans.

Dr. Pagovich died in August of 1990. The complaint alleges that since his death, and despite plaintiff's many requests, defendants have refused to provide plaintiff with statutorily required information regarding the Plans and have failed to release to her the accrued benefits under the Plans. The complaint alleges that by their conduct defendants violated, and continue to violate, their statutory and fiduciary duties prescribed by §§ 101–105, 404 and 405 of ERISA, 29 U.S.C. §§ 1021–1025, 1104 and 1105, and that plaintiff is therefore entitled to redress under §§ 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132. The complaint additionally sets forth common law claims for breach of contract and breach of fiduciary duty.

Plaintiff seeks a judgment directing provision of the ERISA-mandated information respecting the Plans; payment of the Plans' accrued benefits; statutory penalties authorized by § 502(c) of ERISA, 29 U.S.C. § 1132(c); payment of reasonable attorney's fees pursuant to § 502(g) of ERISA, 29 U.S.C. § 1132(g); and punitive damages under her common law breach of fiduciary duty claim.

## II. *DISCUSSION*

### A. *Moskowitz's Motion to Dismiss*

Without citing a particular Rule upon which the motion is based, Moskowitz moves to dismiss the complaint asserting the lack of any "triable issue to be determined by the Court." Given that familiar phrase, the Court treats the motion as brought pursuant to Fed.R.Civ.P. 56. Under that Rule, the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Insurance*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (citation omitted). Once this burden is met, the responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' ... or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Moskowitz has not met his burden under the Rule. His sole basis for seeking summary judgment is his offer to pay plain-

tiff $20,625.81, which he claims represents the total amount of accrued benefits in the Plans as of December 31, 1992, plus an adjustment for any further accrual after that date. Moskowitz's concession that at least $20,625.81 is owing to plaintiff under the Plans is not sufficient justification for dismissal of the complaint. Indeed, that admission is a basis for granting partial summary judgment in that amount to *plaintiff*. *See* Discussion, *infra* pp. 135–136. Payment of the accrued benefits under the Plans is only one of the several forms of relief the complaint seeks, and in any event plaintiff argues that she is entitled to a greater amount of benefits than the amount defendant has offered to pay, an assertion which Moskowitz strenuously denies. There is thus a triable issue on the point. Moreover, Moskowitz has not attempted to demonstrate that no genuine issue of material fact remains as to the complaint's breach of fiduciary duty claims which plaintiff alleges give rise to statutory penalties and payment of attorney's fees. Accordingly, there is absolutely no basis for finding that Moskowitz is entitled to judgment as a matter of law, and his motion for summary judgment dismissing the complaint is therefore denied.

### B. *Plaintiff's Motion to Amend the Complaint*

■ Under Fed.R.Civ.P. 15(a) a court may grant leave to amend the complaint "when justice so requires." The purpose of Rule 15(a) is to encourage disposition of litigation on the merits. *Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945, 952 (S.D.N.Y.1983), *aff'd* 730 F.2d 910 (2d Cir.1984). In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court held that the mandate of Rule 15(a) "is to be heeded," and offered district courts guidance in exercising their discretion. The *Foman* Court wrote:

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given'."

*Id.*

■ Plaintiff requests leave to amend her complaint in order to add the Plans as defendants. Plaintiff contends that the amendment is essential because the Plans themselves must be parties to this suit pursuant to § 502(d)(2) of ERISA, 29 U.S.C. § 1132(d), in order to recover payment of accrued benefits under the Plans.[1] Plaintiff explains that her failure to name the Plans as defendants in the original complaint stems from her ignorance of the Plans' identities. This lack of knowledge assertedly resulted from the defendants' allegedly wrongful failure to provide her with information concerning the Plans. According to plaintiff, the identities of the Plans were not disclosed to her until she received discovery from defendants in September, 1993. Just three weeks later she filed this motion to amend. *See* Affidavit of Richard G. Primoff dated September 22, 1993, at ¶ 2.

In his response to the motion, Moskowitz disparages plaintiff and her counsel for allegedly filing the initial complaint for the sole purpose of harassing Moskowitz in retaliation for his filing suit against plaintiff in state court on an entirely different matter. Moskowitz's response more closely resembles a shrill call for Rule 11 sanctions than opposition to a motion to amend the complaint. Nowhere in his critique has Moskowitz offered any reason for this Court to deny the motion to amend. He does not dispute that the Plans are necessary to the relief sought nor does he charge undue delay in the making of the motion. Moskowitz does not allege that the *amendment* itself is sought in bad faith. His accusations of *improper motives* and conclusory denunciations of the suit's

---

1. 29 U.S.C. § 1132(d) provides in relevant part:
(1) An employee benefit plan may sue or be sued under this subchapter as an entity. . . .
(2) Any money judgment under this subchapter against an employee benefit plan shall be en-

forceable only against the plan as an entity and shall not be enforceable against any person unless liability against such person is established in his individual capacity under this subchapter.

lack of merit do not provide a valid basis for denying plaintiff's motion.

Plaintiff filed the initial complaint on May 12, 1993 and the motion to amend on September 22, 1993. Four months is not an excessive delay particularly given that plaintiff did not know the Plan's identities until three weeks before making the motion, an assertion which has gone unchallenged by Moskowitz. Moskowitz has not shown he would be prejudiced by the amendment, and it is difficult to conceive of any possible prejudice. The initial complaint sought payment of the accrued benefits under the Plans, so no unfair surprise will result from the Plans' joinder. Moreover, the amended complaint does not advance any new factual allegations or claims. Accordingly, because plaintiff has demonstrated the necessity of the amendment and because Moskowitz has not shown, and the Court cannot identify, any reason for the denial of leave to amend, plaintiff's motion to amend is granted.

### C. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment against Moskowitz due to his admission that plaintiff is owed the sum of at least $20,625.81 under the Plans. Plaintiff argues that the Court should grant partial summary judgment in the amount of the uncontested accruals pending resolution of the dispute concerning any greater amount of benefits to which she claims entitlement. Plaintiff further argues that no material issue of fact exists concerning Moskowitz's liability under §§ 502(c)(1) of ERISA, 29 U.S.C. 1132(c)(1), arising from violation of his obligations to furnish plaintiff certain information concerning the Plans. Plaintiff therefore urges the Court to impose the discretionary statutory penalty against Moskowitz authorized by § 1132(c)(1) and to grant her an award of attorney's fees.

#### 1. Undisputed Benefits

Moskowitz has admitted that plaintiff is owed $20,625.81 under the Plans: $13,-743.47 under the Profit Sharing Plan and Trust, and $6,882.34 under the Pension Plan and Trust. No dispute therefore exists as to plaintiff's entitlement to that sum. The par-

ties continue to wage battle over whether the amount of indebtedness is even greater than the sum Moskowitz has admitted. Plaintiff maintains that documents Moskowitz produced in discovery reveal that as of October 31, 1986 Dr. Pagovich's accrued benefits in the Pension Plan were $12,521.44 and his accrued benefits in the Profit Sharing Plan were $11,159.01. In light of this diminution in value over six years of nearly $6,000 in the Pension Plan, and a six-year increase in value in the Profit Sharing Plan of slightly over $2,500, plaintiff argues that issues of fact remain as to whether she is owed more than Moskowitz admits and whether the diminution in value may be the result of a breach of fiduciary duty. Moskowitz disputes these assertions.

A genuine issue of fact clearly exists as to whether the indebtedness to plaintiff is more than the uncontested amount. The fact that a dispute remains as to whether plaintiff is owed anything greater than $20,625.81 does not, however, preclude immediate judgment in the amount which is not in controversy. See e.g. Resnick v. Resnick, 722 F.Supp. 27, 35 (S.D.N.Y.1989) (court granted plaintiff summary judgment as to undisputed amount of accrued benefits under pension plan, leaving for further resolution whether a disputed greater amount was owed). Plaintiff is therefore entitled to partial summary judgment in the amount of $20,625.81, representing the undisputed amount of accrued benefits owed to plaintiff under the Plans.

#### 2. Statutory Penalties

As to the issue of whether Moskowitz violated his duties of disclosure under ERISA giving rise to liability for statutory penalties, plaintiff is also entitled to summary judgment in her favor. Administrators of employee benefit plans governed by ERISA are subject to the stringent disclosure duties set forth under 29 U.S.C. §§ 1024 and 1025. Section 1024(b)(4) directs that the administrator:

"[U]pon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agree-

ment, trust agreement, contract or other instruments under which the plan is established or operated."

Section 1025(a) additionally requires that:

"Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information—

(1) the total benefits accrued, and

(2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable."

"Congress' purpose in enacting the ERISA disclosure provisions was to ensure that 'the individual participant knows exactly where he stands with respect to the plan.'" *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 118, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (quoting H.R.Rep. No. 93–533 p. 11 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4649).

It is undisputed that by letter dated January 20, 1993, plaintiff requested that Moskowitz provide her with:

"the most recent plan documents, together with all amendments, trust documents, the IRS determination letter, summary plan description, summary annual report, Form 5500 and all schedules thereto, and personal benefit statements relating to pension and profit sharing plans with respect to which [plaintiff] is a beneficiary."

*See* Plaintiff's Notice of Motion for Summary Judgment, Exhibit D. It is also uncontested that Moskowitz failed to provide a single document responsive to the request until May 20, 1993 when he furnished plaintiff with a copy of the Benefits Statement for Dr. Pagovich as of December 31, 1992. The only information provided in the Benefits Statement is the amount of the current vested benefit, the date of termination, and the reason for termination. It was not until August 27, 1993,[2] in belated response to Plaintiff's First Request for Production of Documents, that Moskowitz provided a comprehensive set of documents sufficiently responsive to plaintiff's demand and in compliance with Moskowitz's ERISA disclosure duties.

■ Moskowitz admits that he is the administrator of the Plans and that Pagovich is a beneficiary under them. He does not deny that the Plans qualify as benefit plans under ERISA. Nor does he dispute that as an administrator of an employee benefit plan governed by ERISA he is obligated to comply with the duties of disclosure mandated by sections 1024(b)(4) and 1025(a). Moskowitz does not even deny that he failed to comply with his ERISA disclosure duties by failing to furnish the requested documents promptly after the demand was made, and he provides no explanation for his failure to do so.[3]

It is unquestionable, therefore, that no genuine issue of material fact exists as to Moskowitz's liability under § 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1). Pursuant to § 1132(c)(1):

"Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary *within thirty days after such request* may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

(Emphasis added).

As discussed above, Moskowitz failed or refused to provide information which ERISA

---

**2.** Moskowitz's Response to Plaintiff's First Request for Documents is dated August 27, 1993. Plaintiff states that she did not receive the Response and the accompanying documents until September 2, 1993.

**3.** Moskowitz says that he furnished the requested documents 35 days after receiving them from Kronethal. *See* Moskowitz's Affidavit in Opposition at p. 3. If this is intended as an excuse for his untimely provision of the documents by blaming Kronethal's failure to forward them to Moskowitz, it fails. An administrator's duties are non-delegable. *See e.g. Cohen v. Gross, Sklar & Metzger,* 1992 WL 38387, *5–8 1992 U.S.Dist. LEXIS 2356, *14–22 (E.D.Pa. February 25, 1992).

mandates that as the Plans' administrator he provide upon written request of a plan beneficiary. Plaintiff, concededly a beneficiary of the Plans, made such a demand on January 20, 1993. Moskowitz's May 20, 1993 provision of only one of the requested documents is patently insufficient compliance with his duty. He did not provide all of the documents responsive to the request until August 27, 1993, more than seven months after the demand was made. Moskowitz therefore violated his duty of disclosure under ERISA and his conduct gives rise to liability under § 1132(c)(1).

■ Because the award of penalties is committed to the sound discretion of the Court, I must determine whether Moskowitz's conduct warrants imposition of such a penalty. In determining whether to assess a penalty under § 1132(c)(1) courts have considered such factors as bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary. *See Ziaee v. Vest,* 916 F.2d 1204 (7th Cir.1990) (holding that in exercise of its discretion district court may consider factors such as number of requests made and number of documents withheld), *cert. denied* 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991); *Garred v. General American Life Ins. Co.,* 774 F.Supp. 1190 (W.D.Ark.1991) (penalties were assessed due to the willful conduct of the administrator and the harm suffered by plaintiffs in the form of aggravation, frustration, and the need to hire an attorney to wage a lengthy court battle); *Thomas v. Jeep–Eagle Corp.,* 746 F.Supp. 863 (E.D.Wis.1990) (awarding penalties where administrator had no explanation for five-month delay); *Sandlin v. Iron Workers Dist. Council,* 716 F.Supp. 571 (N.D.Ala.1988), *aff'd mem. opinion* 884 F.2d 585 (11th Cir.1989) (assessing penalties in view of the lengthy delay, the frustration and distress of participant, and the deliberate conduct of administrator).

Moskowitz argues that penalties should not be assessed because plaintiff cannot show any prejudice from the delay. Although various district courts in this circuit have held that harm or prejudice to the participant is required for the imposition of a penalty under § 1132(c),[4] the Second Circuit has never addressed the issue. Every circuit which has squarely considered the issue has determined that prejudice or injury to a participant is *not* a prerequisite to the award of statutory penalties for the administrator's failure to disclose requested documents. *See Moothart v. Bell,* 21 F.3d 1499, 1506 (10th Cir.1994) (prejudice or injury is not a prerequisite to the award of § 1132(c) penalties, they are merely factors to be considered); *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488, 1494 (11th Cir.1993) (prejudice is not prerequisite to an award of civil penalties under § 1132(c)); *Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 588 (1st Cir.1993) (prejudice and bad faith are factors the court may consider in exercising its discretion, they are not prerequisites to the imposition of penalties); *Godwin v. Sun Life Assurance Co. of Canada,* 980 F.2d 323, 327 (5th Cir.1992) ("Although section 1132 does not required the claimant to show he was prejudiced to be entitled to penalties ... prejudice is one factor a district court may consider in exercising its discretion.") (footnote omitted); *Ziaee,* 916 F.2d at 1210 (a court may, but need not, consider injury when considering whether to impose § 1132(c) penalties; but a court cannot *deny* penalties on the basis that participant suffered no injury). Judge Sand of this district has also recently considered this precise issue and concluded that prejudice is only one factor to be considered by the court in its exercise of discretion, not a strict prerequisite to the award of penalties. *See Kascewicz v. Citibank, N.A.,* 837 F.Supp. 1312, 1322 (S.D.N.Y.1993).

■ I concur with the decision of Judge Sand and with those circuit courts which have held that lack of prejudice is not a barrier to the imposition of penalties. The

4. *See Plotkin v. Bearings Limited,* 777 F.Supp. 1105, 1108 (E.D.N.Y.1991); *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 233 (S.D.N.Y. 1989); *Chambers v. European American Bank,* 601 F.Supp. 630, 638–39 (E.D.N.Y.1985); *Donaldson v. Hamburg Savings Bank,* 568 F.Supp. 897, 900 (E.D.N.Y.1983).

statute itself is silent on the issue of injury to the participant and I can conceive of no reason why the lack of demonstrable prejudice to a participant should be allowed to prevent an award of penalties against a remiss administrator. Because the purpose of § 1132(c) is to compel administrators to timely comply with their disclosure obligations, *see Winchester v. Pension Committee of Michael Reese*, 942 F.2d 1190, 1193 (7th Cir. 1991), a primary focus on the impact to the participant rather than the administrator's conduct does nothing to further that goal. As the Eleventh Circuit recently aptly stated:

> "Since a plan participant would rarely be able to demonstrate that the failure to provide a timely statement of benefits itself prejudiced the participant, the intent of Congress in enacting section 1132(c) would be frustrated by such a requirement."

*Daughtrey*, 3 F.3d at 1494.

With these precepts in mind, I conclude that Moskowitz's failure to provide the requested information warrants imposition of statutory penalties. Plaintiff alleges that she made numerous unanswered requests for information prior to her January 20, 1993 letter and Moskowitz does not deny this is so. After the January 20 letter, plaintiff made at least two more requests for the information, in a March 8, 1993 letter, and in the First Request for the Production of Documents served in May, 1993, before Moskowitz complied with his statutory duties. Assuming that the January 20, 1993 letter (not some earlier request) is the relevant date for purposes of § 1132(c)(1), Moskowitz delayed more than *seven* months after the request before furnishing the documents.

Moskowitz has never attempted to offer plaintiff or this Court any reasonable explanation for his failure to timely respond to the request for information. I therefore have no reason to believe that his lack of response was less than deliberate or willful. By all

indications, Moskowitz has showed at a minimum a careless indifference for the statutory rights of plaintiff to receive information and for his own statutory obligations to provide it.

Although it is not crucial to this calculus, plaintiff also suffered harm in the form of distress and frustration with her inability to discover any information about the Plans, and in being compelled to retain counsel and initiate this lawsuit in order to receive information to which she was unquestionably entitled. Moskowitz's deliberate or indifferent conduct, the extent and importance of the documents which were not provided, the length of the delay, the number of requests and the harm to plaintiff all weigh in favor of an award of penalties against Moskowitz.

Having determined that an award of penalties is merited, it remains to determine the size of the penalty. In my discretion, I am entitled to award up to $100 per day after the request has been refused or ignored. I have found little precedent, however, to guide the exercise of my discretion. In *Kascewicz*, Judge Sand reviewed numerous cases which had assessed penalties under § 1132(c) and discovered that "the size of the per diem penalties has ranged from $10 a day to $50 a day, and the aggregate penalties have ranged from $1,500 to over $15,000." 837 F.Supp. at 1324 (citations omitted). I think that Moskowitz's breaches of duty are deplorably raw. I believe that $75.00 per diem is appropriate to accomplish the purposes of the statute in this case. Calculation of the penalty shall run from the first day Moskowitz was in default of his disclosure obligations, February 20, 1993 (the thirty-first day after the written request was made), through and including August 26, 1993, the day before Moskowitz furnished the documents responsive to the request.[5] The impermissible delay consists of 187 days and penalties are therefore awarded against Moskowitz personally in the total amount of $14,025.00.[6]

---

5. I shall assume for purposes of this motion that the documents were furnished on August 27, 1993, the day the Response to Plaintiff's First Request for the Production of Documents is dated.

6. Congress has explicitly authorized an award of the penalties sought by plaintiff. Therefore, Moskowitz's argument that *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir. 1992), prohibits awarding punitive damages un-

### 3. *Attorney's Fees*

Plaintiff seeks an award of attorney's fees pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1) based on Moskowitz's violation of his fiduciary duties. The purpose of such an award is "to vindicat[e] retirement rights, even when small amounts are involved." *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 872 (2d Cir.1987), *cert. denied* 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990). The decision whether to award attorney's fees under this provision is committed to the discretion of the Court. *See Mendez v. Teachers Ins. and Annuity Association,* 982 F.2d 783, 788 (2d Cir.1992); *Scalamandre v. Oxford Health Plans (N.Y.), Inc.,* 823 F.Supp. 1050, 1064 (E.D.N.Y.1993). The Court's discretion is guided by the following factors:

> "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants."

*Chambless,* 815 F.2d at 871 (citation omitted).

Applying these considerations to the case at bar, I conclude that an award of attorney's fees is justified. Moskowitz's position is entirely devoid of merit. He has admitted the Plans' responsibility to pay plaintiff $20,-625.81 and does not deny the facts underlying his liability for failure to disclose the requested information. He is irrefutably culpable for the delay in providing the documents and for failing to pay plaintiff the benefits she was due prior to the institution of this action. Moskowitz has offered no explanation for the delay. His reason for failing to pay plaintiff's admittedly owed ben-

efits is that plaintiff refused to execute a *general release* of liability of Moskowitz individually and of the Plans. *See* Moskowitz's Notice of Motion to Dismiss the Complaint, Exhibit A. Holding the benefits hostage in exchange for Pagovich's agreement not to challenge the amount of accrued benefits when Moskowitz's own failure to provide plaintiff access to documents prevented her from verifying the validity of the sum is reprehensible behavior, not a viable excuse for non-payment.

As for Moskowitz's ability to pay the fee award, the parties have not addressed the issue. The Court nonetheless has no reason to believe that Moskowitz will be unable to pay an award, and Moskowitz has not proposed such an incapacity. Not only would an award presumably deter similar conduct by Moskowitz in the future, it would undoubtedly dissuade other administrators from engaging in the sort of deliberate or carelessly indifferent behavior in which Moskowitz engaged, and would therefore obviate the need for many legal actions such as this. Although the final factor, conferring a common benefit on a group of pension plan participants, is inapplicable here the absence of that factor need not alone prevent an award of attorney's fees. *See Mendez,* 982 F.2d at 789; *Ford v. N.Y. Central Teamsters Pension Fund,* 642 F.2d 664, 665 (2d Cir.1981).

Because most of the *Chambless* factors are strongly present in this case and because plaintiff was compelled to initiate this suit by Moskowitz's recalcitrant behavior, I conclude that an award of attorney's fees is appropriate. Plaintiff is awarded attorney's fees representing the cost of pursuing this action against Moscowitz to this stage in the proceedings. Plaintiff may make an application for further attorney's fees, if so advised, only following resolution of the remaining issues.[7]

der § 502(a)(2) of ERISA for cases brought pursuant to § 409 of ERISA, misses the mark.

**7.** An award of attorneys' fees in addition to the assessment of statutory penalties is permissible. *See Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 850 (11th Cir.1990) (affirming district court's award of both attorneys'

fees under § 1132(g)(1) and civil penalties under § 1132(c)); *Porcellini v. Strassheim Printing Co., Inc.,* 578 F.Supp. 605 (E.D.Pa.1983) (granting plaintiff attorneys' fees and assessing civil penalties); *Poole v. Monmouth College,* 1992 WL 349625 (D.N.J. October 19, 1992) (same).

**D.** *Kronethal's Summary Judgment Motion*

■■■ Kronethal's motion for summary judgment raises the question of whether he is a "fiduciary" of the Plans as that term is defined under ERISA. The parties appear to agree that Kronethal is liable under the complaint only if he is a fiduciary.[8]

Under 29 U.S.C. § 1002(21)(A):

"[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

Pursuant to regulations promulgated under ERISA, a person who performs purely ministerial functions "within a framework of policies, interpretations, rules, practices and procedures made by other persons" is not a fiduciary. 29 C.F.R. § 2509.75–8. In his affidavit in support of the motion, Kronethal contends that he is not a fiduciary because he has performed only ministerial functions and has never exercised discretionary control or authority over the disposition of Plan assets or the Plans' administration.

Despite Kronethal's declaration that he is not a fiduciary, he has not demonstrated that no genuine issue of fact remains as to whether he falls under that category. Under the regulations interpreting § 1002(21)(A)(ii), a person renders "investment advice" for purposes of that section if:

"(i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other valuable property; and

(ii) Such person either directly or indirectly (e.g., through or together with any affiliate)—

(A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or

(B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things investment policies or strategy, overall portfolio composition, or diversification of plan investments."

*See* 29 C.F.R. § 2510.3–21(c)(i, ii).

In his affidavit, Kronethal admits that he "discussed investment suggestions with the Plan Trustee, Dr. Moskowitz, with respect to any monies or property of the subject Plan." *See* Kronethal Affidavit at ¶ 8. Yet, he does not aver any facts showing the nature of those "suggestions." Thus, we do not know whether he was compensated for the investment advice, whether he rendered the advice *on a regular basis,* or whether Kronethal and Moskowitz entered into an agreement that his suggestions would serve as the primary basis for investment decisions of the Plans' assets. Thus, even if we were to accept as true Kronethal's description of his ministerial functions, Kronethal's admission that he also rendered investment "suggestions" is an immediate red flag implying a function granting him fiduciary status. Kronethal's silence on the details of his investment role does nothing to dispel this possibility. Moreover, although Kronethal concludes, tracking the

---

**8.** There is no dispute that Kronethal is not an administrator of the Plans as that role is defined under ERISA. *See* 29 U.S.C. § 1002(16)(A).

language of the § 1002(21)(A)(ii), that he had no discretionary authority, responsibility or control with respect to purchasing property for the Plans or over the disposition of Plan assets, he offers absolutely no factual basis for such a conclusion.

Even without rebuttal by plaintiff, Kronethal's motion alone raises questions of fact sufficient to defeat summary judgment. Yet, in response to Kronethal's motion, plaintiff submits documents which indicate that Kronethal may have performed a larger investment role with respect to the Plans than he suggests. Numerous account statements of Plan assets indicate that Kronethal was the registered representative and/or the sales coordinator for investments purchased and sold by the Plans in the accounts. *See* Affidavit of Richard G. Primoff dated April 1, 1994, Exhibit A. Although the substance of the role of sales coordinator or registered representative is not revealed by the documents, these mere titles raise the possibility that despite his assertions Kronethal exercised some level of discretionary control over the Plans' assets. While I intimate no opinion as to the ultimate question, Kronethal's admission that he made investment suggestions and his failure to elucidate the details of his role leave the facts surrounding his responsibilities so murky that summary judgment is wholly inappropriate. Therefore, Kronethal's own affidavit together with this documentary evidence demonstrate that disputed issues of fact remain as to whether Kronethal is or was a "fiduciary" of the Plans.

Summary judgment is improper for an additional reason. Since October 12, 1993, this Court has stayed discovery pending resolution of plaintiff's motion to amend the complaint. Laboring under that stay, plaintiff has been unable to take depositions of either Kronethal or Moskowitz. Until she takes the depositions, Pagovich will be unable to discover the precise nature of Kronethal's duties with respect to the Plans and his investment advice to Moscowitz. Without the benefit of those depositions, plaintiff does not have an adequate opportunity to oppose Kronethal's factual assertions. *See* Fed. R.Civ.P. 56(f). Accordingly, Kronethal's motion for summary judgment is denied with leave to renew once discovery is complete.[9]

## III. *CONCLUSION*

Plaintiff is granted leave to amend her complaint to add the Henry Moskowitz, M.D., P.C., Pension Plan and Trust, and the Henry Moskowitz, M.D., P.C., Profit Sharing Plan and Trust as defendants. Defendants' motions for summary judgment dismissing the complaint are denied. Plaintiff's motion for partial summary judgment against Moscowitz in the amount of $20,625.81 is granted, as is her motion for attorney's fees and sanctions. A penalty in the amount of $14,025.00 is awarded against Moscowitz personally.

Plaintiff is directed to settle judgment on seven (7) days' notice within thirty (30) days of the date of this Opinion and Order. Counsel for plaintiff are also directed to file and serve, within thirty (30) days of the date of this Opinion and Order, a claim for attorney's fees and expenses, consistent with this Opinion, and supported by itemized and contemporaneous time sheets. Defendant Moskowitz may file objections to the claim within twenty (20) days of such service. Once the Court receives those documents it will determine the appropriate amount of the award of attorney's fees.

The parties are directed to attend a status conference on November 4, 1994.

It is SO ORDERED.

---

**9.** I note the failure of both Kronethal and Moscowitz to submit Rule 3(g) statements in connection with their motions. The submission of these statements is mandatory under the local rules. In the future, all parties making and opposing summary judgment motions *must* submit such statements or the sanctions provided for under the rule will be applied.