Charles M. SIKORSKI, Plaintiff,

v.

Henry V. SIKORSKI and Edward Sikorski as trustees of Sikorski Engineering Associates, Inc. Pension Plan and Trust; Sikorski Engineering Associates, Inc. Pension Plan and Trust and Sikorski Engineering Associates, Inc., Defendants.

No. 94 CV 5590 (ADS).

United States District Court, E.D. New York.

July 5, 1996.

Meyer, Suozzi, English & Klein, P.C. by Brian Michael Seltzer, Mineola, New York, for Plaintiff.

Krass & Lund, P.C. by Daniel P. Lund, New York City, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises from an unfortunate family dispute between three brothers. The plaintiff, Charles M. Sikorski ("Charles" or the "plaintiff"), brings this action against his older brother Henry V. Sikorski ("Henry") and his younger brother Edward Sikorski ("Edward") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to obtain a lump sum payment of benefits allegedly due under the defined benefit pension plan, the Sikorski Engineering Associates, Inc. Pension Plan (the "Plan") of his former employer, Sikorski Engineering Associates, Inc. ("Sikorski Engineering" or the "Company," collectively the "defendants"). Presently before the Court are the defendants' motion and the plaintiff's cross motion for summary judgment pursuant to Fed.R.Civ.P. 56.

## I. *Background*

At the outset the Court recognizes that this litigation is only a small part of a greater family feud between the Sikorski brothers with Charles on the one side and Henry and Edward on the other. At one time the parties were apparently a close family engaged in numerous business ventures, too lengthy and elaborate to address fully here. Suffice it to say that resolution of this matter will not end this intra-family dispute.

Sikorski Engineering is an "international engineering firm," which, according to Henry has maintained a "deserved reputation for excellence." In 1982, as part of its compensation package, the Company began offering its employees participation in a defined pension benefit plan. The parties agree that Charles served as the Vice President of Sikorski Engineering from January 1, 1970 through September 17, 1992. The Court notes that the parties agree that Charles stopped working for the Company on either September 17, 1992 or August 31, 1993. The Court will use the September 17, 1992 date throughout its opinion recognizing that the choice of date is irrelevant with regard to these determinations.

During the relevant period, Charles also served as a trustee of the Plan until his separation from the Company in 1992. Henry and Edward served as the Plan's other two trustees since the Plan's inception and continue to act in this capacity. Further, all three brothers were plan participants since 1982, their benefits are vested, and they are all "highly compensated employees" as that term is applied under the provisions of the Internal Revenue Code ("IRC") and ERISA.

The pertinent portions of the Plan as it is presently constituted, the implications of which are not in dispute, are as follows:

*Section 1.3(a)* Each contribution made hereunder shall be conditioned upon the deductibility thereof under the Code;

\* \* \* \* \* \*

*Section 4.2* The Company shall contribute each Fiscal Year during which the Plan is in effect such amounts as are actuarially required to fund the benefits provided in this Agreement and to pay the estimated administration expenses, if any, including all fees, charges and other administrative costs of the Trust, provided such expenses are not paid for by the Company itself. No contribution shall be required to be made by any Participant. The right is reserved by the Company at any time to reduce, suspend or discontinue its contributions hereunder; provided, however,

that any contributions missed during such reduction or suspension and the earnings thereon shall be made up by the Company as actuarially determined unless the Plan shall be terminated. In the event that the Board is of the opinion that the financial circumstances of the Company will not warrant a full contribution to meet the requirements of the Plan, it shall pass a resolution to that effect and furnish a copy thereof to the Trustees.

\* \* \* \* \* \*

*Section 7.1* ... a funding standard account shall be established and maintained, and such an account shall be credited and charged solely as provided under the applicable provisions of the Code....

\* \* \* \* \* \*

*Section 16.4* It is the expectation of the Company that it will continue the Plan in force indefinitely, but continuance of the Plan is completely voluntary and is not assumed as a contractual obligation of the Company.

\* \* \* \* \* \*

*Section 16.5* The Company shall not be liable in any manner to any Participant or Beneficiary if the Trust Fund shall be insufficient to provide for the payment of all benefits. Such benefits shall be payable only from the Trust Fund and only to the extent of the assets of such Trust Fund. Any person having any claim under the Plan shall look solely to the Trust Fund for payment or satisfaction thereof.

From mid 1986 until August 1994, the Plan provided for the payment of benefits in the form of a qualified joint survivor annuity. *See* Charles Aff., Exh. P. ¶ 10.3(a). The Plan however, also contained an option for payment of benefits in the form of a lump sum in the discretion of the Plan Administrator. *See id.,* ¶ 10.3(i)(i).

In the early 1990's, Sikorski Engineering began experiencing financial difficulties. As a result of these problems, the Company's Board of Directors adopted a resolution on March 11, 1994 under which the Plan would be frozen as of March 31, 1994, with no benefits accruing after that date, and termi-

nated on May 31, 1994. Pursuant to the resolution, the Company's officers were authorized to execute any amendments needed to meet the requirements of the IRC and any rules and regulations promulgated thereunder. According to the moving papers, on this same day, March 11, 1994, Henry wrote to Charles concerning two types of possible termination: (1) a standard termination, which would permit distribution to all except highly compensated employees; or (2) a distress termination, which would require that all assets be transferred to the Pension Benefit Guarantee Corporation ("PBGC") and the PBGC would pay all participants a monthly pension commencing on the participant's normal retirement date as a qualified joint and survivor annuity. Henry explained that under ERISA and the IRC, a lump sum benefit could not be paid to highly and former highly compensated employees. Henry then suggested that he, Charles and Edward as highly compensated employees "waive or cut back" a portion of their benefits pro rata to the extent that the Plan lacked sufficient assets to meet the ERISA requirements.

Nevertheless, pursuant to the then existing provisions of the Plan, on April 21, 1994, in writing, Charles requested to have his benefits, an estimated $374,345 at that time, paid "in the form of a lump sum distribution." In support of this request, the plaintiff notes that until this time many of the Company's employees had requested and received lump sum distributions under the Plan. The defendants respond that none of those employees who received lump sum distributions qualified as highly compensated employees in violation of the Plan's terms or applicable law.

Four months later however, on August 30, 1994, the defendants amended Section 13.6 of the Plan to provide:

*Section 13.6* In the event of Plan termination, the benefit of any highly compensated active or former employee is limited to a benefit that is nondiscriminatory under Code Section 401(a)(4).

For Plan years beginning on or after January 1, 1992, benefits distributed to any of the 25 most highly compensated active and former highly compensated employees are

restricted such that the annual payments are no greater than an amount equal to the payment that would be made on behalf of the Employee under a single life annuity that is the actuarial equivalent of the sum of the Employee's Accrued Benefit and Employee's other benefits under the plan. The preceding paragraph shall not apply if: (a) after payment of the benefit to an Employee described in the preceding paragraph, the value of Plan assets equals or exceeds 110 percent of the value of current liabilities, as defined in Code Section 412(1)(7), or (b) the value of the benefits for an Employee described above is less than 1 percent of the value of current liabilities.

These amendments were drafted to comply with federal regulations governing qualified pension plans as discussed more fully below. Of particular significance to this lawsuit, is the language retroactively amending the applicability of the lump sum option back to January 1, 1992.

Applying the amended section 13.6, the defendants have refused to honor the plaintiff's request for a lump sum distribution. In support of their decision, they rely on the calculation of an outside pension consultant, E.C.P. Design & Service Group, Ltd. ("ECP"), retained by the defendants. According to ECP, as of September 30, 1994, plan assets were insufficient to pay out the lump sum benefits sought on a termination basis under the Plan section 13.6. The plaintiff does not dispute these calculations. Rather, Charles argues that the amendment itself is invalid under the federal regulations and prior case law.

## II. *The complaint*

According to the Amended Complaint, filed pursuant to stipulation of the parties on August 21, 1995, Charles claims (1) that he is entitled to a lump sum distribution in the amount of at least $374,345 plus interest under the Plan; (2) that he was unlawfully discriminated against because he was refused a lump sum payment while other participants received such payments; (3) breach of fiduciary duty (4) that the defendants intentionally created the alleged "shortfall" so that paying Charles a lump sum distribution would violate the Plan's 110 percent requirements under section 13.6.; and (5) attorneys' fees.

In the Amended Answer, also filed pursuant to the stipulation discussed above, the defendants deny all material allegations contained in the Amended Complaint and interpose an affirmative defense alleging that the plaintiff has failed to exhaust his administrative remedies.

## III. *The present motion*

The defendants now move for summary judgment in their favor pursuant to Fed. R.Civ.P. 56 on four grounds. First, the defendants contend that they are prohibited under the IRC and regulations promulgated thereunder from paying the plaintiff benefits in a lump sum distribution because such a distribution would disqualify the plan under IRC § 401(a)(4). Second, there has been no discrimination against the plaintiff. The restrictions regarding lump sum disbursements have been applied equally to all highly compensated employees, including Charles, Henry and Edward. Third, the defendants' refusal to pay the plaintiff a lump sum distribution does not constitute a breach of fiduciary duty. Rather, it was a "ministerial act" mandated by law. Fourth, the plaintiff has failed to exhaust his administrative remedies under the plan.

The plaintiff cross moves for summary judgment in his favor with respect to his claims based on this Court's decision in *Auwarter v. Donohue Paper Sales Corp. Defined Benefit Pension Plan,* 802 F.Supp. 830 (E.D.N.Y.1992).

## IV. *Discussion*

### A. *The summary judgment standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corporation v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994) (quoting *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)), and the movant is entitled to judgment as a matter of

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Education v. Cigna Worldwide Insurance Co.*, 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.*, 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn*, 930 F.2d 204 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World*, 922 F.2d at 121. Although the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed.R.Civ.P. 56(c) and (e) provide that the nonmoving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *United States v. Rem*, 38 F.3d 634 (2d Cir.1994).

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Eye Assocs., P.C. v. In-comRx Sys. Ltd. Partnership*, 912 F.2d 23, 27 (2d Cir.1990).

### B. *The parties' motions for summary judgment*

Simply stated, the plaintiff's argument follows. On April 21, 1994, Charles opted to receive his benefits under the Plan as a lump sum. At the time of his election the plan provided for this option under the then effective section 10.3, which provided:

> (i) If the Participant makes a valid election not to receive the "qualified joint and survivor annuity" described in the preceding subsections hereof or if he does not satisfy the requirements therefor, then, subject to the provisions of Sections 10.1 and 10.2, the benefits provided under Articles VIII and IX shall be distributed by whichever of the following methods, or a combination thereof, that the Administrator, in its sole and absolute discretion, may determine:
>
> (i) a lump sum payment;
>
> \*   \*   \*   \*   \*   \*

According to Charles, this provision, which was in effect on the day of his election, April 24, 1994, entitles him to a lump sum distribution. He contends that the promulgation of what is presently section 13.6, added approximately four months later on August 30, 1994, unlawfully eliminates an optional benefit form under IRC, and as a result, is of no force or effect in this case. In support of his position, Charles relies almost exclusively on this Court's decision in *Auwarter v. Donohue Paper Sales Corp. Defined Benefit Pension Plan*, 802 F.Supp. 830 (E.D.N.Y.1992).

In *Auwarter* this Court conducted an analysis of whether the retroactive elimination of a lump sum payment option under a defined benefit pension plan constituted an unlawful reduction in benefits. Pursuant to ERISA § 204(g), a retroactive reduction in accrued retirement benefits including "an optional form of benefit" is prohibited. 29 U.S.C. § 1054(g)(2)(B). Applying Treas.Reg. 1.411(d)–4, Q & A 1(b), this Court held that such optional forms of benefits include lump sum distributions. *Auwarter*, 802 F.Supp. at 837–38.

Regulations issued in 1988 provide that optional benefit forms, such as those effective under section 10.3 when Charles elected a lump sum distribution, may no longer be conditioned upon employer discretion. *See id.* at 838. However, because of the impact of these regulations, Treasury Regulation § 1.411(d)–4, Q & A 1(b)(2) and 8(c) provide a limited exception to this rule for an amendment eliminating an "optional benefit form" where, during a transition period, a plan sponsor selects one of three alternatives and then operates the plan in accordance with that selection. The three alternatives from which a plan sponsor may choose are: (1) eliminating the optional form of benefit; (2) making such benefit available to all participants without limitation or (3) applying objective and non-discriminatory conditions to the availability of the optional forms of benefit. Treas.Reg. § 1.411(d)–4, Q & A(b).

The two relevant dates for exercising one of these alternatives is the first day of the first plan year commencing on or after January 1, 1989, in this case November 1, 1989, and the date by which the Plan must actually be amended to reflect the alternative chosen. Treas.Reg. § 1.411(d)–4, Q & A 9(c)(2). Failure to choose one of the three alternatives consistent with these dates will result in an unlawful elimination of an optional benefit. Treas.Reg. § 1.411(d)–4, Q & A 8(d). In addition, amendment of the Plan at a later date should be consistent with the sponsor's selection as reflected by the plan practice during the period from the effective date until the date the amendment is adopted. Treas.Reg. § 1.411(d)–4, Q & A 8(c)(2).

Applying these provisions, the plaintiff contends that the defendants have failed to effectively amend the Plan thereby eliminating his right to a lump sum distribution. According to Charles, the "[d]efendants, reliance here, on such a belatedly enacted Plan provision, is precisely the same evasive tactic followed by defendants but rejected by this Court in *Auwarter.*" As in *Auwarter,* the plaintiff contends that the defendants' failure to amend the Plan and eliminate the lump sum option until after the plaintiff's election of a lump sum distribution and outside the time permitted under the regulations, is fatal

to their defense. Further, according to Charles, even if the defendants' amendment eliminating the lump sum option was timely under the regulations, it is nevertheless invalid as the defendants have made other lump sum distributions as late as 1992.

The defendants challenge the applicability of *Auwarter* to this case reasoning that a different set of federal regulations controls limitations of benefit options which may be afforded to highly compensated employees. For the reasons set forth below, the Court agrees.

The essence of the defendants' argument is that the August 30, 1994 Plan amendment did not eliminate the lump sum distribution option. Rather, the amendment embodies federal regulations governing distributions to active and former highly compensated employees which effect distributions to highly compensated employees in certain circumstances.

Internal Revenue Code sections 401(a)(4) and 411(d) prohibit qualified retirement plans from discriminating in favor of highly compensated employees. Violations of this section will result in disqualification of the plan. Consistent with the treasury regulations discussed above, IRC § 411(d)(6) prohibits amendment of a plan to retroactively eliminate an optional form of benefit. The related treasury regulations however provide certain exceptions to this rule in limited circumstances. Treasury Regulations §§ 1.401(a)(4)–5(b), which was adopted in 1991, provides in relevant part:

(1) *Required provisions in defined benefit plans.* A defined benefit plan has the effect of discriminating significantly in favor of HCEs or former HCEs unless it incorporates provisions restricting benefits and distributions as described in paragraph (b)(2) and (b)(3) of this section....

(2) *Restriction of benefits upon plan termination.* A plan must provide that, in the event of a plan termination, the benefit of any HCE (and any former HCE) is limited to a benefit that is nondiscriminatory under [IRC] section 401(a)(4).

(3) *Restrictions of distributions—(i) General Rule.* A plan must provide that, in any year, the payment of benefits to or on

behalf of a restricted employee shall not exceed an amount equal to the payments that would be made to or on behalf of the restricted employee in that year under—

(A) A straight life annuity that is the actuarial equivalent of the accrued benefit and other benefits to which the restricted employee is entitled under the plan (other than a social security supplement); and

(B) A social security supplement, if any, that the restricted employee is entitled to receive.

(ii) *Restricted employee defined.* For purposes of this paragraph (b), the term restricted employee generally means any HCE or former HCE....

\*　　\*　　\*　　\*　　\*　　\*

(iv) *Nonapplicability in certain cases.* The restrictions in this paragraph (b)(3) do not apply, however, if any one of the following requirements is satisfied:

(A) After taking into account payment to or on behalf of the restricted employee of all benefits payable to or on behalf of that restricted employee under the plan, the value of plan assets must equal or exceed 110 percent of current liabilities, as defined in section 412(7).

(B) The value of the benefits payable to or on behalf of the restricted employee must be less than one percent of the value of current liabilities before distribution.

(C) The value of the benefits payable to or on behalf of the restricted employee must not exceed the amount described in section 411(a)(11)(A) (restrictions in certain mandatory distributions).

Although section 1.401(a)(4)-5(b) was adopted in September 1991, and the Plan was not amended until August 30, 1994, the treasury regulations further provide for a "remedial amendment period." Treas.Reg. 1.401(b)-1. During this transition period, the Plan must be operated in "accordance with a reasonable, good faith interpretation of section 401(a)(4)," taking into account preexisting guidance and the amendments made by the [Tax Reform Act of 1986] to related

provisions of the [IRC]. Treas.Reg. § 1.401(a)(4)-13.

Also relevant to this determination is Section 1.411(d)-4, Q & A 2(b) which provides in relevant part:

Q-2: To what extent may section 411(d)(6) protected benefits under a plan be reduced or eliminated?

A-2: (b) *Section 411(d)(6) protected benefits that may be eliminated or reduced only as permitted by the Commissioner—* (1) *In general.* The Commissioner may, consistent with the provisions of this section, provide for the elimination or reduction of section 411(d)(6) protected benefits that have already accrued only to the extent that such elimination or reduction does not result in the loss to plan participants of either a valuable right or an employer-subsidized option form of benefit where a similar optional form of benefit with a comparable subsidy is not provided or to the extent that such elimination or reduction is necessary to permit compliance with other requirements of section 401(a) (e.g., section 401(a)(4), 401(a)(9) and 415). The Commissioner may exercise this authority only through the publication of revenue rulings, notices, and other documents of general applicability.

(2) *Section 411(d)(6) protected benefits that may be eliminated or reduced.* The elimination or reduction of certain section 411(d)(6) protected benefits that have already accrued in the following situations does not violate section 411(d)(6)....

(i) *Change in statutory requirement.* A plan may be amended to eliminate or reduce a section 411(d)(6) protected benefit if the following three conditions are met: the amendment constitutes timely compliance with a change in law affecting plan qualification; there is an exercise section 7805(b) relief by the Commissioner; and the elimination or reduction is made only to the extent necessary to enable the plan to continue to satisfy the requirements for qualified plans....

Applying treasury regulation 1.411(d)-4, Q & A 2(b)(1), the IRS has determined that the Commissioner may provide for "elimination

or reduction of section 411(d)(6) benefits that have already accrued [such as an optional benefit form], but only to the extent such elimination or reduction is necessary to permit compliance with the other requirements of [IRC] section 401(a) . . . such as the nondiscrimination rules of section 401(a)(4)." Rev.Rul. 92–76, 1992–2 C.B. 76. Accordingly, "the amendment of a plan to replace plan provisions that complied with section 1.401–4(c) with provisions that comply with section 1.401(a)(4)–5(b) is not deemed to be a violation of section 411(d)(6)." *Id.*

Having reviewed the relevant statutory provisions and regulations the Court notes two more salient facts. First, the Plan, as it was restated in 1994, does not eliminate the lump sum benefit option. Rather Plan section 11.4 provides that a participant may still elect to receive his or her benefits as a lump sum distribution. The only noteworthy distinction is that section 11.4 no longer provides that the exercise of such an option is contingent upon the administrator's discretion, which, as stated above, would be unlawful. Second, *Auwarter* did not address the effect of treasury regulation 1.401(a)(4)–5(b) on plan amendments addressing lump sum distributions.

■ Applying these standards, the Court now grants the defendants' motion for summary judgment in their favor with respect to the first cause of action seeking a lump sum distribution. In this case the Court is presented with the modification of a defined benefit pension plan which was altered to comply with the evolution of the relevant treasury regulations. As stated above, in September 1991 these regulations were modified with regard to distributions to highly compensated employees, such as the plaintiff, where the effect of such a distribution would be to discriminate in favor of those employees. Exceptions to this rule were promulgated for situations in which after the distribution assets would be greater than or equal to 110 percent of liabilities, or the distribution totaled less than one percent of current liabilities. The regulations further provide for a remedial period during which the plan must operate in accordance with these regulations even if the plan has not yet been amended to conform the plan language with the rules. Violation of these regulations would result in the plan losing its qualified status under the IRC. In the Court's view, the defendants' refusal to grant Charles a lump sum distribution constitutes nothing more than compliance with these rules during the remedial period.

In reaching this conclusion, the Court finds that the plaintiff's reliance on *Auwarter* is misplaced. As stated above, in *Auwarter,* the Court was faced with the wholesale elimination of an optional benefit form by amendment, namely the option to receive benefits in a lump sum. In *Auwarter,* the plan amendment failed to comply with the relevant treasury regulations. In this case the lump sum distribution option remains in the amended plan. The only distinctions relevant to this litigation are the limitations placed on that option for highly compensated employees, such as all three of the Sikorski brothers, a limitation based on the modification of Treasury regulations not at issue in *Auwarter.* Indeed, finding that *Auwarter* governed this case would be tantamount to a determination that the defendants should be penalized for complying with Treas.Reg. § 1.401(a)(4)–5(b), a position the Court declines to support.

In reaching this conclusion, the Court also rejects the plaintiff's argument that the defendants must give Charles a lump sum distribution because other employees have been granted similar distributions in the past. In support of this position, Charles points to other employees who the defendants concede were given lump sum distributions. However, the plaintiff fails to establish that any of these distributions were in violation of Treas. Reg. 1.401(a)(4)–5(b). Accordingly, the Court affords no weight to these prior distributions.

■ Having granted the defendants' motion for summary judgment with respect to the first cause of action, the second and third claims for unlawful discrimination and breach of fiduciary duty are easily disposed of. The Court's stated conclusions clearly indicate that the defendants' refusal to grant Charles a lump sum distribution was in compliance with the IRC's nondiscrimination require-

ments. As a result, the defendants' decision could not constitute discrimination or a breach of fiduciary duty. Accordingly, summary judgment dismissing the second and third claims is granted.

■ In his fourth cause of action, Charles alleges that Henry and Edward unlawfully discontinued making contributions to the Plan which ultimately caused the shortfall resulting the Plan's inability to pay the plaintiff a lump sum distribution. Under IRC § 412(c)(3), a plan is permitted to base its funding on actuarial assumptions as long as those assumptions are "reasonable" and "in combination, offer the actuary's best estimate of the anticipated experience under the plan." The "best estimate" requirement "is basically procedural in nature and is principally designed to insure that the chosen assumptions actually represent the actuary's own judgment rather than the dictates of plan administrators." *Wachtell, Lipton, Rosen & Katz v. Commissioner*, 26 F.3d 291, 296 (2d Cir.1994).

In their motion papers the defendants argue that the contributions to the plan were based on "all appropriate considerations" taken into account by the Plan's actuary as required under ERISA and the IRC. The plaintiff does not contest the actuarial computations or the assumptions upon which they are based, nor does the plaintiff offer any evidence that those assumptions were unreasonable. Accordingly, the defendants' motion for summary judgment dismissing the fourth cause of action is also granted.

The only remaining cause of action is for attorneys' fees to which the plaintiff would be entitled if he were successful in this lawsuit. *See* 29 U.S.C. § 1132(g). In view of these determinations granting the defendants' motion for summary judgment with respect to all of the underlying substantive claims, their motion is also granted with respect to the plaintiff's claim for attorneys' fees.

■ The defendants also seek attorneys' fees in the event that their motion is granted. The award of attorneys' fees under ERISA is committed to the discretion of the trial court. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir.

1987), *cert. denied*, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990); *Pagovich v. Moskowitz*, 865 F.Supp. 130, 139 (S.D.N.Y. 1994). The Court's discretion is guided by five factors:

1. The degree of the offending party's culpability or bad faith;

2. The ability of the offending party to satisfy an award of attorneys' fees;

3. Whether an award of attorneys' fees would deter other persons from acting similarly under like circumstances;

4. The relative merits of the parties' positions; and

5. Whether the action conferred a common benefit on a group of pension plan participants.

*Chambless*, 815 F.2d at 871 (citations omitted); *Scalamandre v. Oxford Health Plans (N.Y.), Inc.*, 823 F.Supp. 1050, 1064 (E.D.N.Y.1993). "No one of the five factors is necessarily decisive, and some may not even be appropriate in a given case, but together they comprise 'the nuclei of concerns that a court should address in applying [§ 1132(g) ].'" *Scalamandre*, 823 F.Supp. at 1065, quoting *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814, 828 (S.D.N.Y.1992).

■ Applying these standards, the Court, in its discretion declines to award attorneys' fees to the defendants. In the Court's view, it is not possible to conclude that the plaintiff was acting in bad faith in bringing this lawsuit. There is no indication that he is able to satisfy an award of attorney's fees or that others who are similarly situated would be deterred by such an award. With respect to the relative merits of this lawsuit, the Court believes that the treasury regulations are difficult to navigate, and that the arguments of both sides were plausible. Moreover, there is no indication that this lawsuit conferred a common benefit on anyone. Accordingly, the defendants' motion for attorneys' fees is denied.

■ Having granted the defendants' motion for summary judgment, to complete the record, the Court briefly turns to their alternative argument that the plaintiff failed to

exhaust his administrative remedies. *See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989) (recognizing the defense); *see also Tiger v. AT & T Technologies Plan for Employees' Pensions, Disability Benefits*, 633 F.Supp. 532, 534 (E.D.N.Y.1986). However, reviewing the parties' submissions in light of Article XVI of the Plan, which contains the Plan's claims procedure, the Court is unable to determine whether the administrative requirements have been exhausted.

Attached to the Joint 3(g) Statement is the parties' correspondence regarding benefits information sought by the plaintiff and his request for benefits. In addition to requests for information and payment of benefits, *see* Joint 3(g) Statement, Exhs. C, H, and the defendants' response to those requests, *see id.*, Exhs. F, J, the 3(g) statement contains a letter from plaintiff's counsel referencing an application for benefits which is not attached. *See id.*, Exh. M. Nor is any response annexed. As a result, the Court is unable to determine this issue. Accordingly, the Court finds that there is an issue of material fact as to whether the plaintiff exhausted the administrative remedies set forth in the plan and summary judgment on this ground is denied.

## V. *Conclusion*

After reviewing the parties' submissions, and hearing oral argument, it is hereby

ORDERED, that the defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56 dismissing the Complaint in its entirety is granted; it is further

ORDERED, that the plaintiff's cross motion for summary judgment pursuant to Fed. R.Civ.P. 56 is denied; it is further

ORDERED, that the defendants' motion for attorneys' fees is denied; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.